Cochran *v.* Butterfield.

## COCHRAN *v.* BUTTERFIELD.

If one communicate, partly by writing and partly in conversation, the materials from which another composes a libel, that is insufficient to prove the publication by the former.

If one testify that he received a letter which he supposed to be in the hand writing of the defendant, but that he had never seen the defendant write, and it did not appear that he had other means of knowing

the hand, the evidence is not competent to prove the letter to have been written by the defendant.

In an action for a libel, it is irrelevant to prove that the defendant has libelled other persons, or that he has threatened to do so.

CASE, for a libel alleged to have been published, or caused to be published, in "The Gleaner," a newspaper printed at Manchester, December 14, 1844.

The defendant pleaded the general issue. The plaintiff called as a witness, John Caldwell, who testified that he is editor of "The Gleaner;" that an article had been previously published against the defendant, who called and asked for the name of the writer, which the witness refused; that the article in question was written by the witness from materials furnished by the defendant, some of which were furnished in a conversation at that time, and some were furnished in a letter, which the witness said he received from the defendant, post marked at Mont-Vernon. Upon cross examination the witness said the letter did not bear the proper signature of the defendant, nor had he ever seen the defendant write; yet he believed it came from him. The witness stated, and pointed out in the article in question, some of the materials which he said were so furnished him, but could not tell which were furnished in the letter. To this testimony the defendant objected, unless the letter was produced, and also because it was incompetent in any event.

The plaintiff's counsel admitted that the letter was not lost or destroyed, but declined to produce it. The court, for the purposes of this case, and since the testimony went before the jury, under the expectation that the letter would be produced, now declined to rule the evidence out. To which the defendant excepted.

The plaintiff proposed to prove that the defendant had threatened to publish, and had published in the "The Gleaner," about the same time, articles of similar character with the one in question, concerning other individuals

living in New-Boston, and in the neighborhood of these parties ; to which the defendant objected, but the court admitted it. The plaintiff then produced a manuscript of an article which he said was published in "The Gleaner" about that time, against one Sumner L. Cristy, and which he proposed to prove to be in the hand writing of the defendant; and called a witness, who testified that all the manuscript was in the defendant's hand writing, except a few words at the bottom, which he thought were written by some other person. The plaintiff's counsel, because the evidence showed other words in the manuscript, not in the defendant's hand writing, withdrew the papers. To this withdrawal of the papers at this time, without giving him an opportunity to inspect it, to cross-examine the witness upon it, or to offer rebutting testimony upon the paper itself, the defendant objected. But the court, for the purposes of this trial, allowed the plaintiff to withdraw and retain it.

The jury returned a verdict for the plaintiff, and the defendant moved to set it aside, and for a new trial.

*Barstow*, for the plaintiff.

*Haselton, Parker & Pierce*, for the defendant.

GILCHRIST, J. A libel is a writing, picture, or other sign, and is so distinguished from slander, which consists in words spoken.

But he who by words causes another to write or paint the thing conveying the libellous matter, may be guilty, as if his own hand traced the lines.

It would, however, confound this distinction between the two offences of verbal and written slander, to charge him who speaks the words as the author of a libel, which another, of his own motion, composes and publishes from the materials thus furnished.

This action is against the defendant for publishing a libel in the " Gleaner." The evidence is, that he communicated orally some of the materials that were woven into the production by the witness, and that a letter supposed, upon evidence presently to be considered, to have been written by the defendant, furnished other materials. The letter might itself have been a libel, but a different one, no doubt, from that complained of in the action. Besides, if it were the same it is not proved.

Now this evidence comes entirely short of proving that the defendant published, or procured another to publish, any libel whatever in the Gleaner. It does not appear that he ever requested a libel to be composed out of the materials that he supplied, or that he expected, or had any cause of suspecting, that his communications would have been used for such a purpose.

The case bears no resemblance to that of *The King* v. *Johnson,* 7 East 65, where the defendant not only had previously requested the insertion of communications upon the subject of the alleged libel in Mr. Cobbet's paper, but in one of the communications, recognized the preceding as having been published in that paper, and used expressions denoting that they had been sent for that purpose.

If, however, we are so to understand the case as to be allowed to suppose that there was other evidence competent to show that the defendant, in some way, instigated the composition and publication of a libel, having the features of that which was contained in the Gleaner, other questions arise.

1. There was no evidence competent in law to prove that the defendant communicated with the witness by a letter mailed at Mont-Vernon. His signature was not affixed, and competent testimony of one who had seen him write, or had other means of knowing his hand, was not produced, nor was the paper exhibited. The evi-

dence must, therefore, be considered as if there were no such letter; and as the only connection between the defendant and some parts of the libel must have been through such a letter, it follows that he could not have originated or caused the libel proved.

2. That the defendant had libelled other persons, or threatened to do so, was not a fact proper to be proved in this action. The use, therefore, that the plaintiff was permitted to make of a paper, by which he had sought to establish that irrelevant fact, seems to be itself immaterial.

For the purpose of proving malice, it has been permitted the plaintiff, in an action of slander, to give in evidence other words spoken by the defendant, and against him. *Merrill* v. *Peaslee*, 17 N. H. 540 ; *Rustell* v. *Macquiester*, 1 Camp. 49. But no case is recollected in which the plaintiff, either to prove malice or to corroborate the evidence of the principal fact, has proved that the defendant has composed or published libels upon other persons. Cooke's Laws of Defamation 148–9.

The evidence reported was insufficient to prove the publication of the libel by the defendant, and was incompetent in the particulars that have been pointed out. The verdict must, therefore, be set aside, and a

*New trial granted.*